UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE:                               )    Bankruptcy No. 07 B 01853
                                     )    Chapter 7
MICHELLE JOHNSON,                    )    Judge John H. Squires
                                     )
        Debtor.                      )

## MEMORANDUM OPINION

This matter comes before the Court on the motion of Philip V. Martino, as Chapter 7 trustee

(the "Trustee") for an order directing turnover of real estate escrow deposit (the "earnest money")

pursuant to 11 U.S.C. § 542(a). Although the escrowee has not responded to the Trustee's motion,

Jeffery White, the prospective buyer of the real estate (the "Buyer"), objects to the motion. For the

reasons set forth herein, the Court grants the motion. The Court finds that the Trustee proved the

Buyer breached the residential real estate contract (the "Contract") and that, as a result, the earnest

money is property of the bankruptcy estate under 11 U.S.C. § 541(a)(7). Accordingly, the Court

orders the escrowee, Sudler Sotheby's International Realty, to deliver the Buyer's earnest money to

the Trustee pursuant to 11 U.S.C. § 542(a).

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal

Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(E).

-2-

## II. FACTS AND BACKGROUND

On February 4, 2007, Michelle Johnson (the "Debtor") filed for bankruptcy relief under Chapter 7 of the Bankruptcy Code. The Trustee was appointed shortly thereafter. The Debtor owned a three-unit apartment building located at 377 Green Bay Avenue in Calumet City, Illinois (the "Property"). Litton Loan Servicing/Deutsche Bank National Trust Company ("Litton") held a mortgage note on the Property. The Debtor was in default on the mortgage payments to Litton. As a result, on June 25, 2007, Litton obtained an order from the Court modifying the automatic stay so that Litton could proceed with foreclosure on the mortgage. (Trustee Ex. 9.) The Court delayed the order's effective date until July 16, 2007. (*Id.*) Two tax liens and a judgment lien also encumbered the Property. Tenants occupied the three units of the Property.

In order to try and obtain some equity from the Property, the Trustee hired Sandra Haswell, a real estate broker, to assist him in selling the Property. Haswell inspected the Property and completed a market analysis. She then listed the Property on a multiple listing service ("MLS") as "ATTRACTIVE, WELL-MAINTAINED BRICK 3-UNIT APT. BLDG." (Buyer Ex. 1, p. 1.) The Buyer testified at trial that he was interested in investing in a three-unit building. The Buyer reviewed the MLS listing with Leonard Hill, his real estate agent. Hill then contacted Haswell about the Property on behalf of the Buyer. Haswell explained to Hill that the Property was part of a bankruptcy estate and she faxed Hill a short explanation sheet about the procedure of purchasing property from a bankruptcy estate. (Trustee Ex. 1 & 2.) Paragraph three of the explanation sheet stated "[r]easonable Earnest Money is required and is non-refundable if buyer defaults for any reason with the exception of mortgage contingency or cancellation of the contact [sic] during attorney or inspection contingencies, prior to submission of the Offer to the Court for approval." (Trustee Ex.

-3-

1 ¶ 3.) Haswell testified that Hill confirmed he received this explanation sheet and gave it to the

Buyer.

Hill and the Buyer went to look at the Property. Haswell testified that she never represented

to the Buyer anything about the zoning of the property. The Buyer made a written offer to purchase

the Property and the Trustee signed and accepted the offer, creating the Contract on May 17, 2007.

(Trustee Ex. 3.) The parties also executed a rider to the Contract that the Trustee uses regularly

when selling properties on behalf of bankruptcy estates. (Trustee Ex. 4.) The Contract contains the

following provisions:

> **5. MORTGAGE CONTINGENCY:** This Contract is contingent upon Buyer obtaining an
> unconditional written mortgage commitment (except for matters of title and survey or
> matters totally within Buyer's control) on or before May 31, 2007. . . . If Buyer, having
> applied for the loan specified above, is unable to obtain a loan commitment and serves
> written notice to Seller within the time specified, this Contract shall be null and void and
> earnest money refunded to Buyer. . . .

> **12. ATTORNEY REVIEW:** The respective attorneys for the Parties may approve,
> disapprove, or make modifications to this Contract, other than stated Purchase Price, within
> five (5) business days after the Date of Acceptance. . . . If written notice is not served within
> the time specified, this provision shall be deemed waived by the Parties and this Contract
> shall remain in full force and effect.

> **20. SELLER REPRESENTATIONS:** Seller represents that he has not received written
> notice from any Governmental body or Homeowner Association of (a) zoning, building, fire
> or health code violations that have not been corrected. . . .

(Trustee Ex. 3, ¶¶ 5, 12, 20.) In addition, the rider to the Contract provides as follows:

> R-2. **Earnest Money.** Purchaser has deposited with Seller's agent as escrowee, the
> amount of $1,000, which shall be increased to $5000.00 once Seller files a motion
> with the bankruptcy court to approve the sale concurrent with the submission of this
> Agreement (the **"Initial Deposit"**). The Initial Deposit shall be non-refundable
> unless the Bankruptcy Court in Case No. 05 B 59190 (the **"Bankruptcy Court"**)
> refuses to approve the transaction contemplated by this Agreement, in which case the
> Initial Deposit shall be returned to Purchaser and thereafter this Agreement shall be
> null and void. Following Bankruptcy Court approval, the Initial Deposit shall be

-4-

returned to Purchaser only in the event of a material default by Seller. In no event shall Purchaser be entitled to the return of the Initial Deposit.

R-3.  **Title.**  Notwithstanding anything in the Contract to the contrary, Purchaser acknowledges that the deed required hereunder is a quit claim deed conveying to Purchaser any and all right, title and interest that Seller has in and to the Property without representation or warranty; provided, however, pursuant to the order of the Bankruptcy Court, Seller agrees to deliver to Purchaser at closing whatever title it has to the Property free and clear of all liens other than the lien relating to real estate taxes.

R-4.  **Representations and Warranties.**  PURCHASER REPRESENTS AND WARRANTS TO SELLER THAT EITHER PURCHASER OR A DULY AUTHORIZED AGENT OF PURCHASER HAS INSPECTED THE PROPERTY AND PURCHASER IS SATISFIED WITH AND ACCEPTS THE CONDITION OF THE SAME.  PURCHASER REPRESENTS AND WARRANTS TO SELLER THAT PURCHASER IS PURCHASING THE PROPERTY ON ANY [sic] "AS IS, WHERE IS" BASIS WITH ALL FAULTS, WITH NO WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, EITHER ORAL OR WRITTEN, ECEPT [sic] AS EXPRESSLY STATED IN THIS AGREEMENT, WHETHER OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, CONDITION OF IMPROVEMENTS, OR OTHERWISE MADE BY SELLER OR ANY AGENT OF SELLER, INCLUDING, BUT NOT LIMITED TO, THE ENVIRONMENTAL, PHYSICAL OR STRUCTURAL CONDITION OF THE PROPERTY.  WITHOUT LIMITATION OF THE FOREGOING, ALL OF THE INFORMATION AND MATERIALS, IF ANY, PROVIDED BY SELLER OR ESCROWEE IS PROVIDED SORELY [sic] FOR INFOMRATIONALAL [sic] PURPOSES AND SELLER MAKES NO WARRANTY, REPRESENTATION OR GUARANTY AS TO THE ACCURACY OR COMPLETENESS OF SUCH INFORMATION.  UPON CLOSING, PURCHASER AGREES TO ASSUME ALL RESPONSIBILITIES, LIABILITIES AND OBLIGATIONS WITH RESPECT TO THE ENVIRONMENTAL, PHYSICAL OR STRUCTURAL CONDITION OF THE PROPERTY AND ACCESS THERETO.  PURCHASER ACKNOWLEDGES THAT THIS AGREEMENT HAS NO CONTINGENCIES WITH RESPECT TO THE CONDITION OF THE PROPERTY.   THE REPRESENTATIONS, WARRANTIES AND OBLIGATIONS OF PURCHASER IN THIS PARAGRAPH R-4 SHALL SURVIVE THE CLOSING CONTEMPLATED HEREUNDER.

R-6.  **Irrevocable Offer.**  Purchaser acknowledges that it has read and understands the terms and conditions as set forth in this Agreement, and agrees to purchase the above-described property at, for and upon the above-stipulated price and terms, and that this Agreement shall not be binding upon Seller until executed by Seller or Seller's fully authorized agent following requisite Bankruptcy Court approval.

-5-

R-9.    **Miscellaneous.**

     e.     This Agreement contains the entire agreement between the parties; it may not be modified, amended or discharged nor may any of its terms be waived except by an instrument in writing signed by the party to be bound thereby. Neither party has relied upon any verbal or written representation, agreement or understanding not set forth herein.

     f.     Time is of the essence of this Agreement.

R-10.    **Modifications to Contract.**  The following modifications are hereby made to the Contract:

     (ii)     If Purchaser defaults, the earnest money shall be forfeited to Seller as Seller's sole and exclusive remedy.  If Seller defaults, the earnest money shall be refunded to Purchaser as Purchaser's sole and exclusive remedy.

(Trustee Ex. 4, ¶¶ R-2, R-3, R-4, R-6, R-9(e)(f), R-10(ii).)  The rider to the Contract further provided for a closing date of June 28, 2007.  (Trustee Ex. 4, ¶ R-5.)

The Trustee testified that he utilizes short contingency periods and non-refundable earnest money provisions to protect the estate when incurring the expenses of petitioning the bankruptcy court for approval of a contract and preparing for closing.  The Trustee transfers property by quit claim deed because he does not know anything about a debtor's property except what the debtor tells him.  As a result, the Trustee allocates the risk of any problems with the property onto the buyer.

On May 21, 2007, the Trustee filed with the Court the a motion for authority to sell property and pay brokers' commission.  (Trustee Ex. 5.)  The Trustee served the Buyer and Hill with the motion.  (*Id.*)  Around May 25, 2007, the Buyer deposited the $5,000 earnest money with Haswell.

The Buyer did not express to Haswell or the Trustee any problems with the Contract or its terms during the attorney review or mortgage contingency period.  At some point in time, however, the Buyer's attorney told the Buyer that the Property was zoned for a single family home.  The Buyer's mortgage loan company told the Buyer that the zoning needed to be corrected before it

-6-

would approve the loan. On June 5, 2007 Hill told Haswell that the Buyer was unable to obtain financing due to issues with the zoning of the property. Haswell informed the Trustee of the Buyer's financing difficulties. On June 12, 2007, the Court held the hearing on the Trustee's motion. Neither the Buyer nor anyone representing him attended the hearing. After the hearing, the Court authorized the Trustee to sell the Property. (Trustee Ex. 6.)

After obtaining court authority, the Trustee and his attorneys began preparing for closing. The Trustee negotiated with a creditor who had a judgment lien on the Property. The creditor agreed to waive the lien in exchange for payment of $5,000 on June 28, 2007. The Trustee also negotiated with the tenants concerning their security deposits. The Trustee's attorneys prepared the documents necessary for closing, including issuing a check to pay transfer taxes to Calumet City on the anticipated sale. (Trustee Ex. 7.)

On June 21, 2007, the Buyer's attorney sent the Trustee a fax asking for the mortgage contingency provision of the Contract to be extended until July 16, 2007. (Trustee Ex. 8.) The Buyer requested such an extension because Calumet City told the Buyer that the Property was zoned as a single family home. (*Id.*) The Buyer also requested proof from the Trustee that the Property was properly zoned. (*Id.*)

On June 26, 2007, the Trustee's attorney responded to the Buyer's attorney concerning the requests in the Buyer's fax. (Trustee Ex. 10.) The Trustee informed the Buyer's attorney that the Trustee rejected the Buyer's request to extend the mortgage contingency period. (*Id.*) Moreover, the Trustee asserted that under the Contract, the Trustee had no obligation to provide proof of zoning as he was selling the Property "as is, where is" without any representation as to fitness for any

-7-

particular use. (*Id.*) Finally, the Trustee stated that if the Buyer did not close, the Buyer would be

in default and the Trustee would consider the Buyer's earnest money forfeited. (*Id.*)

The Trustee then signed and delivered all documents necessary for the closing. On June 28,

2007, the Buyer did not attend the scheduled closing for the sale of the Property. The Trustee's

attorney sent a letter to the Buyer and the Buyer's attorney declaring the Buyer in default of the

Contract. (Trustee Ex. 11.) The Trustee requested that the escrowee of the Buyer's earnest money,

Sudler Sotheby's International Realty, turn the earnest money over to the Trustee. The escrowee

would not release the earnest money without the consent of the Buyer, and the Buyer refused to give

his consent. The Buyer testified that he still wanted to close on the Property if the Trustee would

obtain "proper zoning."

On August 3, 2007, the Trustee filed the instant motion for an order directing turnover of real

estate escrow deposit pursuant to 11 U.S.C. § 542. The Buyer opposes the motion, contesting the

Trustee's claim to the earnest money. The Court held an evidentiary hearing on October 22, 2007.

Thereafter, the matter was taken under advisement.

## III. DISCUSSION

The Trustee asserts in his motion that the Buyer is in breach of the Contract. As a result, the

Trustee argues he is entitled to retain the Buyer's earnest money. The Trustee further asserts that the

earnest money is therefore property of the bankruptcy estate under 11 U.S.C. § 541(a)(7). Thus, the

Trustee seeks turnover of property of the estate under 11 U.S.C. § 542(a).

Buyer raises three arguments in objection to the Trustee's motion. First, the Buyer contests

the existence of a valid contract between the parties because there was no meeting of the minds or

-8-

alternatively, because the Trustee made a material misrepresentation to the Buyer. Second, the Buyer

asserts that the Trustee did not perform his duties under the Contract because the Trustee failed to

obtain a certificate of compliance in accordance with the Calumet City Code. Finally, the Buyer

argues that he did not breach the Contract because the Contract was not binding until the Trustee

obtained court approval of the Contract. The Buyer further states that he had a reasonable time after

the Trustee obtained court approval to notify the Trustee of any financing issues. Alternatively, the

Buyer argues that the Court should excuse his breach of the Contract due to a mutual mistake of fact

concerning the zoning of the Property.

The Trustee must prove that the Buyer breached the Contract for the earnest money to be

property of the estate, subject to turnover to the Trustee. A party must prove four elements to prove

a breach of contract under Illinois law: (1) the existence of a valid and enforceable contract; (2) its

own performance of the contract; (3) a breach by the other party to the contract; and (4) damages.

*Zirp-Burnham, LLC v. E. Terrell Assocs., Inc.*, 826 N.E.2d 430, 439 (Ill. App. Ct. 2005); *Burwell

v. City of Mattoon*, 378 F.3d 642, 651 (7th Cir. 2004); *Brown v. Real Estate Resource Mgmt., LLC*,

No. 04 A 4032, 2006 WL 1749619, at *3 (Bankr. N.D. Ill. June 21, 2006). The Court finds that by

a preponderance of the evidence the Trustee has proved each element of a breach of the Contract and

rejects the Buyer's arguments.

## A.    A Valid and Enforceable Contract Exists Between the Parties

The Trustee must first prove that the parties have a valid and enforceable contract. The

Trustee offered into evidence the written Contract signed by both parties. (Trustee Ex. 3.) The

Buyer argues that the parties did not enter into a valid and enforceable contract for two reasons.

First, the Buyer argues that the parties had no "meeting of the minds," a necessary element to

-9-

contract formation. Second, the Buyer argues that no contract was formed because the Trustee made

a material misrepresentation to the Buyer.

### 1. "Meeting of the Minds"

The Buyer argues that he and the Trustee did not have a "meeting of the minds" concerning

what the Contract requires the Trustee to convey to the Buyer. The formation of a valid and

enforceable contract requires an offer, acceptance of the offer, consideration, and definite and certain

terms. *Zirp-Burnham*, 826 N.E.2d at 439. The offer and acceptance requirements of contract

formation are sometimes described as a "meeting of the minds." *See Colfax Envelope Corp. v. Local

No. 458-3M, Chicago Graphic Comme'ns Int'l Union, AFL-CIO*, 20 F.3d 750, 752-53 (7th Cir.

1994) (describing the concept as strained). Both parties must assent to the terms of the contract.

*Calo, Inc. v. AMF Pinspotters, Inc.*, 176 N.E.2d 1, 4 (Ill. App. Ct. 1961).

The Buyer argues the Contract implicitly requires the Trustee to convey to the Buyer a three-

unit building so zoned but in fact the Trustee is conveying a building zoned for a single family

residence. The Buyer concludes that the Trustee is not delivering to the Buyer what the Buyer had

bargained for under the Contract. Thus, the parties did not mutually assent to the terms of the

Contract. The Court rejects the Buyer's argument because it ignores the plain language of the

Contract.

The Contract does not specifically require the Trustee to convey a three-unit building to the

Buyer. The Contract is silent regarding any required zoning for the Property. Nor does the Contract

state that the Trustee is conveying a properly zoned three-unit building. The Contract requires the

Trustee to convey the real estate and "all improvements thereon" located at "377 Greenbay Street,

Calumet City, Illinois 60408." (Trustee Ex. 3, p. 1.) If the Buyer intended to receive a properly

-10-

zoned three-unit building, he should have expressed this intention in the Contract. *See Air Safety,
Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999) (stating that in a written contract, a
court looks to the language of the contract to determine the intent of the parties). The Court declines
to read additional terms into the Contract that the parties did not express.

## 2. Material Misrepresentation

Next, the Buyer argues, as a defense to contract formation, that the Trustee made a material
misrepresentation to the Buyer which induced the Buyer to enter into the Contract. A party must
prove the following elements to prove a material misrepresentation: (1) an intentional false statement
of material fact; (2) intent to induce the other party to act; (3) justifiable reliance by the other party
on the statement; (4) damages resulting from the reliance. *Kopley Group V., L.P. v. Sheridan
Edgewater Props., LTD.*, 876 N.E.2d 218, 228-29 (Ill. App. Ct. 2007).

The Buyer argues that the Trustee misrepresented to the Buyer in the MLS listing that the
building was a three-unit building. The Buyer states this misrepresentation is material because the
Property is zoned as a single family residence. The Buyer further asserts that this misrepresentation
induced him to sign the Contract. The Buyer testified that he and his family wanted to invest in a
three-unit building. Finally the Buyer argues that he justifiably relied on this misrepresentation
because he deposited $5,000 of earnest money. The Court rejects these arguments.

The Buyer does not, and cannot, deny that the structure on the Property is in fact a three-unit
building as the MLS listing stated. Haswell testified that the Buyer and his real estate agent, Hill,
inspected all three units of the building before the Buyer made his offer. The fact that the building
may be improperly zoned does not change its nature as a three-unit building.

-11-

Moreover, the MLS listing contains no statements whatsoever concerning the Property's zoning and further states "INFORMATION NOT GUARANTEED." (Buyer Ex. 1, p. 2.) Haswell testified that she never represented to the Buyer that the three-unit building on the Property complied with zoning ordinances. The Buyer's testimony did not contradict this statement. Turning to the terms of the Contract, the rider specifically states that the Trustee would transfer the Property by quit claim deed and "as is, where is." (Trustee Ex. 4, ¶¶ R-3 & R-4.) The Trustee and the Buyer expressly agreed under the Contract that the Trustee made no warranties of any kind concerning the Property. (Trustee Ex. 4, ¶ R-4.) The Contract further states that it "contains the entire agreement between the parties. . . . Neither party has relied upon any verbal or written representation, agreement or understanding not set forth herein." (*Id.* ¶ R-9(h).) Zoning is a matter of public record and the Buyer was free to investigate the zoning of the property before submitting an offer or during the contingency periods. *See O'Brien v. Noble*, 435 N.E.2d 554, 556-57 (Ill. App. Ct. 1982) (finding broker not liable for failing to inform buyer of zoning ordinance and stating that "zoning matters are public record, accessible to everyone"). Accordingly, the Court finds the Trustee did not misrepresent to the Buyer the three-unit nature of the building or the zoning of the Property. The Buyer does not have a material misrepresentation defense to formation of the Contract. The Court concludes the Trustee and the Buyer entered into a valid and enforceable contract.

**B.    The Trustee Performed his Duties under the Contract**

Second, the Trustee must prove that he performed his duties under the Contract. The Trustee offered evidence that he obtained an order from the Court authorizing him to sell the Property to the Buyer. (Trustee Exs. 5 & 6.) The Trustee testified that he negotiated with tenants and lienholders to prepare for the closing. The Trustee further testified that his lawyers prepared the necessary

-12-

documents for closing and that the Trustee signed and delivered the documents. Finally, the

Trustee's attorneys issued a check to Calumet City to pay the transfer taxes owed it at the proposed

sale. (Trustee Ex. 7.)

The Buyer argues that the Trustee did not perform his duties under the Contract because the

Trustee refuses to provide the Buyer with proof that the Property is properly zoned. (Trustee Ex. 10.)

The Buyer also argues that the Trustee has not performed his duties under the Contract because he

failed to comply with the point of sale inspection requirement of Calumet City ordinance § 14-1.

The Court rejects these arguments.

As to the Buyer's first argument, the Buyer points to no provision of the Contract that

requires the Trustee to provide the Buyer with proof that the Property is properly zoned. Rather, the

Contract specifically states that the Trustee makes no warranties of any kind. (Trustee Ex. 4, ¶ R-4.)

Thus, the Trustee's refusal to provide the Buyer with zoning proof is not a failure to perform under

the Contract. Had the Buyer sought a specific covenant or warranty regarding the zoning of the

Property, he should have made that a condition of his offer to be included in the Contract for the

purchase and sale of the Property: he did not do so.

As to the Buyer's second point, Calumet City ordinance § 14-1 requires a property seller to

provide the Department of Inspectional Services with a notice of transfer. CALUMET CITY, ILL.,

MUNICIPAL CODE § 14-1(b). The Department will then inspect the property. *Id.* § 14-1(c). All

structures must comply with city building ordinances. *Id.* § 14-1(c). After inspection, the

Department will issue a notice concerning repairs necessary to bring a structure into compliance with

the zoning regulations. *Id.* § 14-1(g). An owner who has not made necessary repairs may still

transfer ownership of the property if he deposits funds for the repairs with the city or if the buyer

-13-

enters into an agreement with the city to make the necessary repairs. *Id.* § 14-1(j). The Buyer argues

that the Trustee has not taken the necessary steps to transfer the Property to the Buyer in compliance

with the ordinance. The Court rejects this argument.

The language of the ordinance does not create a duty owed from the seller to the buyer.

While the ordinance may impose a duty on the seller enforceable by the City, there is no indication

in the statute that the City intended the ordinance to create a duty on the seller enforceable by or for

the benefit of the buyer. In interpreting a similar point of sale ordinance in *Hairston v. Goodman*,

the court stated that the ordinance did not create a duty to any particular person and found that the

ordinance "cannot supplant or abrogate the rights of the parties to contract as they wish." No. 58193,

1991 WL 39715, at *5-6 (Ohio Ct. App. Mar. 21, 1991). Thus, the Court finds that the Trustee's

alleged failure to comply with the ordinance did not prevent the Trustee from performing his duties

as the Contract required. The Court concludes the Trustee performed his duties under the Contract

and was prepared to close the transaction.

## C.    Buyer Breached the Contract

Third, the Trustee must prove that the Buyer breached the Contract. The rider to the Contract

stated that the parties would close on June 28, 2007. (Trustee Ex. 4, ¶ R-5.) The rider also stated,

"[t]ime is of the essence of this Agreement." (Trustee Ex. 4, ¶ R-9(I).) The Buyer failed to attend

the scheduled closing on June 28, 2007.

A court will strictly enforce a "time is of the essence" provision in a contract if the parties

intended strict enforcement. *Hart v. Lyons*, 436 N.E.2d 723, 725-26 (Ill. App. Ct. 1982). To

determine the parties' intentions for strict enforcement, a court will look to the language of the

agreement and the circumstances surrounding the agreement. *Id.* at 726. In this case, the language

-14-

of the Contract clearly states that time is of the essence. (Trustee Ex. 4, ¶ R-9(f).) Moreover, the Trustee testified that he did not want to push back the closing because he had agreed to pay a judgment lienholder $5,000 on June 28, 2007 in exchange for a waiver of that lien. The Trustee also negotiated with the tenants on the Property concerning their security deposits. Finally, Litton, the mortgagee, had moved the Court to modify the automatic stay so that it could foreclose on the delinquent mortgage. The Court granted the motion but delayed the order's effective date to July 16, 2007. These surrounding circumstances demonstrate the parties' intentions that the provision be strictly enforced. Thus, the Court will strictly enforce the "time is of the essence" provision of the Contract. Because the Buyer did not attend the closing on June 28, 2007 or perform the payment duties as the Contract required, the Court finds the Buyer in breach of the Contract.

The Buyer raises two arguments refuting his breach of the Contract. First, the Buyer argues that he did not breach the Contract because the Contract did not become binding until the Court approved the sale of the Property. Second, the Buyer argues that his non-performance under the Contract should be excused due to a mutual mistake of fact concerning the zoning of the Property. The Court rejects these arguments.

### 1. When the Contract Became Effective

The Buyer first argues that the Contract between the parties did not become effective until June 12, 2007, when the Court approved the sale. The Buyer further argues that he had a reasonable time after the Contract became effective to notify the Trustee of any financing issues. The Buyer faxed a letter to the Trustee concerning his inability to obtain financing on June 21, 2007. (Trustee Ex. 8.) The Buyer asserts that June 21, 2007 was within a reasonable time after court approval on June 12, 2007. Thus, the Buyer argues that he did not breach the Contract.

-15-

The Buyer bases his argument on the following provision in the rider to the Contract:

> Purchaser acknowledges that it has read and understands the terms
> and conditions as set forth in this Agreement, and agrees to purchase
> the above-described property at, for and upon the above-stipulated
> price and terms, and that this Agreement shall not be binding upon
> Seller until executed by Seller or Seller's fully authorized agent
> following requisite Bankruptcy Court approval.

(Trustee Ex. 4, ¶ R-6.). The Buyer also cites the case of *Steen v. Luther (In re Estate of Harmston)*

in support of his argument. 295 N.E.2d 66 (Ill App. Ct. 1973). In that case, the parties entered into

an agreement for the sale of real property. *Id.* at 67. The agreement stated that it was subject to

approval by the circuit court, probate division. *Id.* In determining whether the buyers in the contract

had standing to object to the sale of the property to a third party, the court stated that the buyers were

"merely unaccepted bidders for the subject real estate since their proposed agreement. . .was made

expressly subject to approval of the court. . . ." *Id.* at 68. In reaching this conclusion, the court relied

on a section of the Illinois Probate Act. *Id.* Because the case at bar does not concern interpretation

of the Illinois Probate Act, the *Steen* case is not relevant and is inapposite.

Paragraph R-6 of the rider to the Contract does not prevent the Contract from binding the

parties, rather it creates a condition. "A condition is an event, not certain to occur, which must

occur. . .before performance under a contract becomes due." RESTATEMENT (SECOND) OF

CONTRACTS § 224 (1981). Under paragraph R-6, the Court's approval of the sale was a condition

to the parties' performance. If the Court did not approve the sale, the Trustee would be excused from

performing under the Contract. In reality, however, the Court did approve the Contract and the

Trustee performed his duties as the Contract required. Thus, the Court rejects the Buyer's argument

that the Contract was not binding because the rider required approval by the Court as a condition to

-16-

the Trustee's performance. Moreover, court approval for the sale was obtained on June 12, 2007

prior to the closing date of June 28, 2007 required under the Contract.

Furthermore, the existence of this condition provides no basis for the Court to reform the

terms of the Contract and extend the mortgage contingency period where the parties have expressed

their intentions under the Contract terms. The Contract specifically provided for a mortgage

contingency period until May 31, 2007. If the Buyer desired more time, he should have negotiated

and received more time under the Contract. Thus, the Court rejects the Buyer's argument that the

Contract did not become binding until court approval on June 12, 2007 and that the Buyer had a

reasonable time thereafter to inform the Trustee of financing difficulties.

### 2. Mutual Mistake of Fact

The Buyer makes a second argument that his breach should be excused due to a mutual

mistake of fact. The Buyer cites the case of *Kazwell v. Reynolds* in support of his argument. 250

Ill. App. 174 (Ill. App. Ct. 1928). In that case, the buyer and seller entered into a contract for the sale

of a ten-acre tract of land. *Id.* at 175. Upon surveying the land, the parties discovered a zoning

restriction on the land that neither the buyer nor seller knew about before entering into the contract.

*Id.* at 175-76. The zoning restriction made the land worth less than the sale price provided for in the

contract. *Id.* at 176. The buyer wanted to enter into a new contract with a lower purchase price for

the land; the seller refused. *Id.* The buyer then filed a complaint against the seller to declare the

contract null and void and to obtain a refund of the buyer's earnest money. *Id.* The court noted that

the zoning restriction was a matter of public record and stated that the buyer had a duty to inform

himself of possible restrictions on land he wished to purchase. *Id.* at 177. The court found that,

under these circumstances, the buyer did not demonstrate a mistake of fact or a mistake of law. *Id.*

-17-

at 178. Thus, the court dismissed the buyer's complaint. *Id.* Contrary to the statements in the Buyer's brief, the *Kazwell* court did not hold that neither party breached the agreement nor did the court order the return of the buyer's earnest money. (Response to Motion to Turnover Escrow Deposit and Memorandum of Law in Support, p. 3.)

In this case, like in *Kazwell*, the zoning of the Property was a matter of public record. The Contract provided for an attorney review period and a mortgage contingency period. (Trustee Ex. 4, ¶¶ 5 & 12.) The parties signed the Contract on May 17, 2007. The Buyer had five business days after the Contract was signed to have an attorney review and object to the Contract. (*Id.* ¶ 12.) Moreover, under the mortgage contingency clause, the Buyer had until May 31, 2007 to notify the Trustee of any issues with the financing. (*Id.* ¶ 5.) The Buyer could have investigated the zoning status of the Property and relevant ordinances related to the Property during these periods. The Buyer, however, did not bring the zoning issue and financing problem to the attention of the Trustee until June 5, 2007. The Buyer did not provide the Trustee with written notice of the problems until June 21, 2007. Both dates were after the attorney review and financing contingency periods provided under the Contract had expired. The Buyer's failure to investigate the issue in a timely manner does not create a mistake of fact defense to the formation and effectiveness of the Contract.

**D.     The Bankruptcy Estate Suffered Damages from the Buyer's Breach**

Finally, the Trustee must prove the bankruptcy estate suffered damages as a result of the Buyer's breach of the Contract. Paragraph R-10(ii) of the rider to the Contract specifically and expressly provided for forfeiture of the Buyer's earnest money to the Trustee as the sole and exclusive remedy in the event of the Buyer's default. The Trustee testified that he negotiated with a judgment lienholder to waive its lien in exchange for prompt payment of $5,000 on June 28, 2007.

-18-

The estate lost this opportunity and any other equity in the Property after satisfaction of the

delinquent arrearage when the Buyer did not attend the closing. The Trustee also testified that his

lawyers filed a motion with the Court for authority to sell the Property and prepared all the

documents necessary for the closing. (Trustee Ex. 5.) The estate incurred costs in making the

motion and preparing for closing. Thus, the Court finds the bankruptcy estate suffered damages as

a result of the Buyer's breach. These damages are expressly limited to the forfeiture of the Buyer's

earnest money paid under the Contract.


## IV. CONCLUSION

The Court finds that the Trustee has proved each element of breach of contract. The Court

concludes that the Buyer is in breach of the Contract. The Contract provides that if the Buyer

breaches the Contract, the Trustee's sole and exclusive remedy is to retain the Buyer's earnest

money. (Trustee Ex. 4, ¶ R-10(ii).) Thus, the Court finds that the Buyer's forfeited earnest money

under the Contract for the sale of the Property became property of the bankruptcy estate under 11

U.S.C. § 541(a)(7). The Court orders the escrowee, Sudler Sotheby's International Realty, to deliver

the Buyer's earnest money to the Trustee pursuant to 11 U.S.C. § 542(a).

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance

with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to

Federal Rule of Bankruptcy Procedure 9021.


**ENTERED:**


DATE: _____12/5/7_____          _____

                                              **John H. Squires**
                                    **United States Bankruptcy Judge**


cc: See attached Service List

**SERVICE LIST**

**Michelle Johnson**
**Bankruptcy Case No. 07 B 01853**

Eric E. Walker, Esq.
Phillip V. Martino, Esq.
DLA PIPER US LLP
203 N. LaSalle Street, Suite 1900
Chicago, IL 60601-1293

Ernest B. Fenton, Esq.
15835 Campbell Avenue
Markham, IL 60428

Sherry L. Howard, Esq.
Law Office of Sherry L. Howard
30 East 34th Street
Steger, IL 60475-1759

Sandra Haswell
Carla Martinucci
Sudler Sotheby's Realty
1650 N. Wells Street
Chicago, IL 60614

Patricia D. Miller-Lockridge, Esq.
PMB 296
3011 W. 183rd Street
Homewood, IL 60430-2804

William T. Neary, United States Trustee
227 W. Monroe Street
Suite 3350
Chicago, IL 60606